*Formatted for Electronic Distribution*                                    *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

In re:

      **Michael A. Rutherford,**
             **Debtor.**

Filed & Entered
On Docket
December 6, 2012

**Chapter 7 Case**
**# 12-10562**

## ORDER
### GRANTING MOTION TO AVOID THE LIEN OF JAY FELIX
### ON DEBTOR'S HOMESTEAD PREMISES

On October 5, 2012, Michael A. Rutherfod (the "Debtor") filed a motion to avoid lien pursuant to 11 U.S.C. § 522(f)(2) (doc. # 12) (the "Motion").[1]  The Motion sought to avoid "the mechanics lien" held by Mr. Jay Felix.  Attached to the Motion as an exhibit was a document entitled "Mechanics Lien" showing a claim of $7,111.77 due and owing from the Debtor, @ 5% from April 1, 2011.  The mechanics lien document was stamped with a notation that it was recorded in the City of Winooski on April 18, 2011.

On October 23, 2012, Mr. Jay Felix filed an objection to the Motion, stating that the basis for the mechanics lien was work he did and improvements he made on the Debtor's home and asserting that his lien was perfected by "case docket number s1333-11Cnsc. Dated March 23, 2012." (doc. # 18).  On November 27, 2012, the Court held a hearing on the Motion, attended by both the Debtor and Mr. Felix.

At the November 27th hearing, the testimony of Mr. Felix, argument by the Debtor's counsel, and exhibits filed with the Court clarified the factual background and the type of lien held by Mr. Felix.  Mr. Felix filed a mechanics lien on April 18, 2011, evincing the work he did on the Debtor's home (Felix Ex. 1).  Thereafter, he chose to pursue his claim against the Debtor through a small claims complaint, filed on December 12, 2011, in the Chittenden Superior Court (Felix Ex. 2).  In the small claims action, Mr. Felix obtained a judgment in the amount of $5,078.75 on March 23, 2012 (Id.).  Though not raised in the testimony, the Court takes judicial notice that the small claims judgment was recorded in Winooski on October 23, 2012, the same day Mr. Felix filed his objection to the Motion. (Id.)

The Motion and objection present two legal issues: First, is Mr. Felix's lien statutory or judicial? Second, is his lien avoidable under 11 U.S.C. § 522(f)?

---

[1] On November 26, 2012, the Debtor filed an amended Motion (doc. # 35) to correct errors in the date and amount of other liens against the Debtor's property.

The Debtor acknowledges that a statutory lien, such as a mechanics or contractor's lien[2], may not be avoided under § 522(f), but argues that while Mr. Felix began the process to obtain a mechanics lien under the Vermont state statute, he abandoned that process and pursued his claim against the Debtor via a suit in small claims court. Therefore, his lien is a judicial lien, and within the universe of liens that may be avoided under § 522(f). The testimony of Mr. Felix, and the exhibits Mr. Felix presented to the Court, supported the Debtor's rendition of the facts and procedural history of Mr. Felix's claim and lien.

In order to obtain a contractor's lien in Vermont, the legislature has set forth a very strict set of requirements. See 9 V.S.A. § 1921-24. This Court has stated before that "[a] party seeking enforcement of a contractor's lien must be scrupulous in adhering to the procedures set forth in the statute." In re Ducharme and In re Cusson, Nos. 06-10154 and 06-10195, jointly administered, 2008 WL 2857163, at *4, 2008 Bankr. LEXIS 2552, at *16–17 (Bankr. D. Vt. July 21, 2008), aff'd 412 B.R. 646 (D. Vt. 2009) (both decisions appended hereto). Here, as Mr. Felix conceded in his testimony, he failed to file suit in the Superior Court and therefore failed to obtain a writ of attachment, within 180 days of filing the notice of the lien dated April 18, 2011, as required by 9 V.S.A. § 1924. Instead, he filed a small claims suit in December 2011 in the Superior Court. In failing to meet the requirements of 9 V.S.A. § 1924, Mr. Felix failed to obtain a statutory lien. However, in obtaining a judgment in small claims court, he did obtain a valid judicial lien. Thus, the answer to the first question presented is that Mr. Felix's lien is a judicial lien. The Court turns not to the question of whether it may be avoided.

## Avoidance of Mr. Felix's Judicial Lien Under 11 U.S.C. § 522(f)

The Bankruptcy Code (Title 11 United States Code) authorizes debtors to avoid certain judicial liens, if the lien impairs the debtor's homestead exemption. The test for determining whether a particular lien may be avoided is set out in 11 U.S.C. § 522(f), which provides, in relevant part, as follows:

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, **if such lien is**—

    (A)  **a judicial lien** . . . ; or—

    (B)  a nonpossessory, nonpurchase-money security interest in any—

        (i)    household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

        (ii)   implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

        (iii)  professionally prescribed health aids for the debtor or a dependent of the debtor.

---

[2] These two terms are used interchangeably in the papers and arguments, and also herein. The pertinent Vermont statute denominates the lien a contractor's lien but it is colloquially known as a mechanics lien.

(2)  (A)  For the purposes of this subsection, a lien shall be considered to impair an
exemption to the extent that the sum of—

    (i)  the lien;

    (ii)  all other liens on the property; and

    (iii)  the amount of the exemption that the debtor could claim if there
were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the
absence of any liens.

11 U.S.C. § 522(f)(1) and (2) (emphasis added).  The § 522(f) calculation as it applies to the avoidance of Mr. Felix's judicial lien is as follows:

(i) The Debtor seeks to avoid the judicial lien of approximately $5,078.75.

(ii) All other liens on the property include three other judicial liens of approximately $10,438.00 (Cavalry SPV I, LLC), $3,467.39 (Capital One), $5,143.74 (Worldwide Asset Purchasing), and a mortgage lien of $151,200.00 (Chase Mortgage), for a total of $170,249.13.  These must be added to the Felix judgment amount.[3]

(iii) The amount of the Debtor's claimed homestead exemption is $125,000.00.

The sum of these liens and the maximum homestead exemption is $300,327.88.  From this total, the Court subtracts the value of the property absent any liens, $243,400.00,[4] to determine that the extent of the impairment of exemption.  It is $56,927.88.  Since the extent of the impairment, $56,927.88, exceeds the value of Mr. Felix's lien, approximately $5,078.75, the entire lien may be avoided.  Hence the answer to the second question is that Mr. Felix's lien is avoided.

Accordingly, IT IS HEREBY ORDERED that the Debtor's motion to avoid Mr. Felix's lien is GRANTED.

SO ORDERED.

December 6, 2012
Burlington, Vermont

Colleen A. Brown
U.S. Bankruptcy Judge

---

[3] The Debtor supplied the figures for these three judicial liens in his original motion to avoid lien which is based upon the Debtor's estimated interest due on the judgments and the Court relies upon these figures for the purposes of this motion.

[4] At the hearing, the parties disagreed over the exact current value of the home, though neither party offered any admissible evidence of a current value different than the value stated by the Debtor on his schedules under penalty of perjury.  Thus, for purposes of this motion, the Court relies upon $243,400.00, the value set out in Schedule A as the value of the home.

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
**(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))**

**H**

Only the Westlaw citation is currently available.

United States Bankruptcy Court.
D. Vermont.
In re Dorothy **DuCHARME**, a/k/a Dorothy **Duch-arme**, Debtor.
In re Tammy J. **Cusson**, Debtor.

Nos. 06–10154, 06–10195.
July 21, 2008.

John C. Gravel, Esq., Bauer, Gravel, Farnham, Nuovo, Parker & Lang Burlington, VT, for Debtors.

Michael Carver, Esq., Greene, Seaver & Carver, P.C., Burlington, VT, for Creditor.

### *MEMORANDUM OF DECISION*
COLLEEN A. BROWN, Bankruptcy Judge.
### *GRANTING DEBTORS' MOTION TO AVOID LIEN OF JAMES A. NAYLOR D/B/A NAYLOR CONSTRUCTION*

**\*1** The dispute presented in this contested matter is whether James A. Naylor d/b/a Naylor Construction ("Naylor") has a valid contractor's lien FN1 against homestead property jointly owned by Dorothy **DuCharme** and Tammy **Cusson** (the "Debtors") FN2 and, if so, whether the Debtors may avoid that lien through their bankruptcy cases. There is no dispute as to the material facts underlying the creation of the contract between the parties or Naylor's efforts to obtain a judgment against the Debtors based upon the Debtors' breach of contract. The legal issues presented by the Debtors' "Motion to Determine Secured Status of Lien ... Pursuant to 11 U.S.C. § 506(d), Or in the Alternative, To Avoid Lien in Part Pursuant to 11 U.S.C. § 522(f)(1)(A)" (the "Motion") are: (1) whether Naylor may enforce his state court judgment as a contractor's lien, notwithstanding his failure to record it within five months; and (2) whether the Debtors may avoid Naylor's judgment as a judicial lien that impairs the

Debtors' homestead exemption. For the reasons articulated below, the Court finds, first, that Naylor's failure to record his judgment in the manner prescribed by the Vermont Contractor's Lien Statute is fatal and therefore no part of his judgment may be enforced as a contractor's lien; and second, that the judgment is a judicial lien that impairs the Debtors' homestead exemption, and therefore may be avoided under § 522(f) FN3 of the Bankruptcy Code.

> FN1. The parties alternately refer to the subject lien as a contractor's lien and as a mechanic's lien. Although such liens are colloquially referred to as mechanic's liens, the pertinent Vermont statute designates these liens as contractor's liens. Accordingly, the Court will refer to Naylor's lien as a contractor's lien.

> FN2. These two chapter 7 cases were filed as a single case and then severed by order dated May 9, 2006. The cases are being jointly administered for purposes of this motion since this dispute focuses on a single contract signed by both Debtors, a lien against a single parcel of property that is owned jointly by the two Debtors, and a state court action against both Debtors that arises from a single transaction relating to that contract and parcel of property.

> FN3. All statutory citations refer to Title 11, United States Code (the "Bankruptcy Code"), unless otherwise indicated.

### *BACKGROUND FACTS & PROCEDURAL HISTORY*
The parties have each filed a statement of the facts they allege to be undisputed and material to the instant dispute (doc.31, 38) . FN4 Their statements are substantially similar with regard to all of the material facts. FN5 The Court has therefore distilled the two statements to the following recitation

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))

of material facts:

> FN4. For ease of reference, the Court will cite the document numbers from the **Ducharme** case, since the document numbers in the **Cusson** case do not correspond to those in **Ducharme**, and citing two numbers for each document could be confusing.

> FN5. Naylor's Statement of Undisputed Facts, however, contains a great deal of argument as well as irrelevant detail. *See* doc. # 38.

1. On April 1, 2004, the Debtors, as the joint owners of a residence located at 21 Clifford Street in Winooski, Vermont, (the "Property"), entered into a contract with Naylor to perform certain repairs to the Property.

2. Thereafter, a dispute arose between the parties and the Debtors did not pay Naylor pursuant to the contract.

3. On September 28, 2004, Naylor filed a Notice of Contractor's Lien dated September 27, 2004. He recorded the lien in the Winooski land records at volume 158, page 173.

4. Naylor filed suit in Chittenden Superior Court (Docket No. 142–05CnC) for breach of contract, to perfect his contractor's lien against the Property, and to obtain damages under Vermont's "Prompt Payment Act."

5. On March 25, 2005, Naylor obtained a Writ of Attachment and Order of Approval of Writ of Attachment in the amount of $20,000; Naylor timely recorded the Writ in the Winooski land records at volume 162, pages 210–213, pursuant to 9 V.S.A. § 1921 *et seq.*

6. On April 22, 2005, the Debtors granted a mortgage on the Property, in the amount of $184,800, to Aegis Lending Corporation ("Aegis"); Aegis recorded the mortgage in the Winooski land re-

cords at volume 163, pages 341–355. The current balance due on this mortgage is approximately $182,000.

**\*2** 7. There is a prior mortgage against the Property, dated June 12, 1997, in the amount of $6,000, in favor of the Vermont Housing and Conservation Board ("VHCB"); it is recorded in the Winooski land records at volume 111, page 37.

8. On February 22, 2006, Naylor obtained a Judgment Order (the "Judgment") against the Debtors in the Chittenden Superior Court action (described in ¶ 4, above); the Judgment awarded Naylor $42,594 plus interest and penalties, and specified the components of the award as follows:

WHEREFORE, the court awards Judgment for [Naylor] against the [Debtors] in the amount of $42,594.02 plus interest and penalties as provided by law. This Judgment includes the $25,000 due under the contract plus the $2210.10 in consequential damages that [Naylor] suffered because of the [Debtors'] wrongfully withheld payment on the construction contract. In addition, the court finds that [Naylor] is entitled to collect from the [Debtors] statutory interest at the rate of 12% per year from August 21, 2004 through the date of this judgment on the $25,000 under the contract. [Naylor] is also awarded statutory penalties at the rate of 1% per month for the $25,000 due under the contract from August 21, 2004 through the date of his judgment. As the prevailing party in the litigation, [Naylor] is awarded his attorney's fees and costs. Accordingly an amount equal to the fees and costs ($15, 373.92) has been included in this judgment.

9. As of the date Naylor filed his Motion, the Judgment Order had not been recorded in the Winooski land records.

10. On March 23, 2006, the Debtors filed a Notice of Appeal from the Superior Court Judgment

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))

Order.

11. On April 10, 2006, the Debtors each filed a chapter 7 bankruptcy petition (doc. # 1).

12. In their bankruptcy petitions, the Debtors claimed the Property was valued at $210,000, of which $10,000 was exempt under 27 V.S.A. § 101. No timely objection was made to this exemption.

13. On May 11, 2006, the Debtors filed a motion to avoid the Naylor lien (doc. # 7); on May 16, 2006, Naylor filed an objection to that motion (doc. # 10); on June 1, 2006, the Debtors withdrew the motion (doc. # 14).

14. On May 16, 2006, Naylor filed a motion for relief from stay to enforce his lien (doc. # 11); on June 1, 2006, the Debtors opposed the motion (doc. # 14); on June 13, 2006, the Court granted Naylor relief from stay (doc. # 16).

15. On August 7, 2006, the Debtors were each granted a discharge and the cases were closed shortly thereafter (doc. # 19).

16. On September 18, 2007, the Vermont Superior Court issued a decision affirming the Superior Court Judgment. *Naylor v. Cusson & Ducharme*, 940 A.2d 717, 2007 VT 108 (Vt.2007).

17. On September 28, 2007, Naylor filed a motion in Chittenden Superior Court, pursuant to the Prompt Payment Act, requesting that the court issue a Final Judgment Order that included an award of all post-judgment attorney's fees totaling $38,202.50.

**\*3** 18. On November 29, 2007, the Debtors filed motions to reopen their respective chapter 7 cases (doc. # 23), accompanied by motions to avoid Naylor's lien (doc. # 24). Naylor objected to both motions (doc.25, 26).

19. On January 15, 2008, the Court heard argument on the motions. The Court granted the motions to reopen the cases; an Order to that effect was entered on January 18, 2008 (doc. # 27). The Court reserved decision on the motions to avoid lien, and ordered the parties to submit statements of material fact. FN6

FN6. Although not pertinent to the instant dispute, Naylor also filed motions to dismiss the chapter 7 cases (doc. # 34) and motions for a stay pending appeal (doc. # 35) with respect to this Court's order granting the motions to reopen. The Debtors opposed both motions (doc.49, 50) and the Court denied the motions (doc.53, 57).Naylor has appealed the orders granting the motions to reopen (doc. # 29), and the appeals are currently pending before the U.S. District Court for the District of Vermont.

21. The parties supplemented the record by filing a copy of the Vermont Supreme Court decision and the briefs filed in connection with the appeal of the Superior Court judgment order (doc. # 61).

### JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334.

### ISSUES PRESENTED

The Debtors' Motion (doc. # 24) presents two issues. The first issue is whether Naylor has a valid contractor's lien. The second issue is whether that lien is vulnerable to avoidance in bankruptcy. If Naylor has a valid contractor's lien, then, to the extent the state court judgment enforces that contractor's lien, it is a statutory lien and not subject to avoidance in bankruptcy. If, by contrast, Naylor does not have a valid contractor's lien, then the state court judgment is a judicial lien that may be avoided, under § 522(f)(1) of the Bankruptcy Code, to the extent it impairs the Debtors' homestead exemption.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
**(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))**

*DISCUSSION*

**I. Statutory Background for Ascertaining Validity of Contractor's Lien**

Property interests are created and defined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In that regard, federal courts have long held that the validity and construction of liens are questions of state law. *See Peck v. Jenness,* 48 U.S. 612, 615, 7 How. 612, 12 L.Ed. 841 (1849); *In re Continental Vending Mach. Corp.,* 543 F.2d 986, 992 (2d Cir.1976). Accordingly, the Court will look to Vermont law to determine the validity of Naylor's alleged contractor's lien.

The Second Circuit Bankruptcy Appellate Panel, in *Official Unsecured Creditors' Comm. of the Rainbow Trust v. Moulton Constr., Inc. (In re Rainbow Trust),* 216 B.R. 77 (2d Cir.BAP1997), summarized the Vermont contractor's lien statute's requirements for perfection and enforcement:

Under Vermont's contractor's lien statute, 9 V.S.A. § 1921 *et seq.,* FN7 a contract that is made to improve real property, furnish labor, or provide materials creates a contractor's lien upon the property. 9 V.S.A. § 1921(a). A contractor is required to record a notice of memorandum of lien in the town clerk's office which "shall charge such real estate with such lien as of the visible commencement of work or delivery of material...." *See* 9 V.S.A. §§ 1921(c), 1923. FN8 Within three months of filing the notice, the contractor is then required to commence an action to enforce the contractor's lien. 9 V.S.A. § 1924. FN9 Within that three month period, the lienholder must also secure an attachment on the real property that is the subject of the lien under Rule 4.1 V.R.Civ.P., FN10 in order to perfect the contractor's lien. *Id.* *See also In re APC Construction, Inc., supra,* 132 B.R. 690, 694 (citations and internal quotations omitted) ("Obtaining a judicial order for a writ of attachment within the three month period prescribed under § 1924 perfects the lien and is a requisite to preserving the statutory lien.... The fail-

ure to perfect a recorded notice of lien by obtaining a writ of attachment means the lien is lost"). "[T]he property involved must be actually attached within the three-month period, and ... it is not enough that the suit be merely commenced." *Filter Equipment Co., Inc. v. International Business Machines Corp.,* 142 Vt. 499, 502, 458 A.2d 1091 (1983) (citations omitted). Any judgment obtained must contain a brief statement relating to the contract. 9 V.S.A. § 1924. Within five months of the date of the judgment, the plaintiff must record a certified copy of the judgment with the town clerk's office. *See* 9 V.S.A. § 1925. FN11 The effect of that recordation is to encumber the real estate "... for the amount due upon such judgment ... from the time of the visible commencement of work or delivery of materials...." *See* 9 V. S.A. § 1925. Furthermore, "the resulting judgment, when obtained, has the force of a mortgage, and a right of foreclosure for non-payment." *Filter Equipment Co., Inc. v. International Business Machines Corporation, supra,* 142 Vt. at 502, 458 A.2d 1091.

FN7. 9 V.S.A. § 1921, entitled "Extent of lien; notice" provides as follows:

(a) When a contract or agreement is made, whether in writing or not, for erecting, repairing, moving or altering improvements to real property or for furnishing labor or material therefor, the person proceeding in pursuance of such contract or agreement shall have a lien upon such improvements and the lot of land on which the same stand to secure the payment of the same.

(b) A person who by virtue of a contract or agreement, either in writing or parol, with an agent, contractor, or subcontractor of the owner thereof, performs labor or furnishes materials for erecting, repairing, moving, or altering such improvements shall have a lien, to secure

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))

the payment of the same upon such improvements and the lot of land upon which the same stand, by giving notice in writing to such owner or his or her agent having charge of such property that he or she shall claim a lien for labor or material. The notice shall include the date that payment is due, if known. Such lien shall extend to the portions of the contract price remaining unpaid at the time such notice is received.

(c) A lien herein provided for shall not continue in force for more than 180 days from the time when payment became due for the last of such labor performed or materials furnished unless a notice of such lien is filed in the office of the town clerk as hereinafter provided.

(d) A lien under this section shall not take precedence over a deed or other conveyance to the extent that consideration therefor has been paid in good faith before record of such lien. Such lien shall not take precedence over a mortgage given by the owner thereof upon such building, property or improvements and the lot of land on which the same stand, as security for the payment of money loaned and to be used by such owner in payment of the expenses of the same, if such mortgage is recorded before such lien is filed in the office of the town clerk as hereinafter provided. If such mortgagee shall receive written notice that any lien hereunder is to be claimed, such lien shall take precedence over such mortgage as to all advances thereafter made under such mortgage to such mortgagor, except such advances as the mortgagee may show were actually expended in completing such improvements to real property.

(e) The lot of land covered by such lien shall be deemed to be all of the land owned or held by the owner and used or designed for use in connection with such improvements, but such lien shall not extend to other adjacent lands used for purposes of profit.

(f) A lien under this section may not be waived in advance of the time such labor is performed or materials are furnished, and any provision calling for such advance waiver shall not be enforceable.

9 V.S.A. § 1921 (2008).

FN8. 9 V.S.A. § 1923, entitled "Recording notice of lien," specifies how to perfect a contractor's lien:

A person claiming a lien under section 1921 of this title shall file for record in the clerk's office of the town where such real estate is situated, a written memorandum, signed by him, asserting his claim, which shall charge such real estate with such lien as of the visible commencement of work or delivery of material to the extent and subject to the exceptions provided in sections 1921 and 1922 of this title. Several such liens, asserted as aforesaid, shall be paid pro rata, if the sum due or to become due from the owner thereof is not sufficient to pay the same in full.

9 V.S.A. § 1923 (2008).

FN9. 9 V.S.A. § 1924, entitled "Action to enforce lien," sets out the requirements for enforcing a perfected lien:

Within 180 days from the time of filing such memorandum, if such payment is due at the time of such filing and within 180 days from the time such payment becomes due, if not due at the time of such filing, such person may commence

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

his or her action for the same and cause such real estate or other property to be attached thereon. If he or she obtains judgment in the action, the record of such judgment shall contain a brief statement of the contract upon which the same is founded.

9 V.S.A. § 1924 (2008).

FN10. Vermont Rule of Civil Procedure 4.1(b), entitled "Writ of Attachment: Issuance," sets out the procedure for obtaining a writ of attachment:

(1) A writ of attachment shall be filled out as provided in subdivision (c) of this rule and issued to the plaintiff's attorney by the clerk of the court in the county where the action is pending or the property is located. Such writ shall issue only upon the order of a Superior or District Judge approving attachment for a specified amount as provided in paragraph (2) or (3) of this subdivision. The order shall specifically state the grounds of its issuance and shall be incorporated in and made part of the writ.

(2) Except as provided in paragraphs (3) and (4) of this subdivision, an order of approval may be issued only upon motion after five days' notice to the defendant, or on such shorter notice as the judge may prescribe for good cause shown, and upon hearing and a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance, bond, or other security shown by the defendant to be available to satisfy the judgment. The motion shall be filed with the complaint and shall be supported by an affidavit or

affidavits meeting the requirements set forth in subdivision (i) of this rule. The motion and affidavit or affidavits, together with the notice of hearing thereon, shall be served upon the defendant in the manner provided in Rule 4 at the same time that the summons and complaint are served upon the defendant.

V.R.Civ. P. 4.1(b) (2008).

FN11. 9 V.S.A. § 1925, entitled "Foreclosure," provides:

Within five months after the date of such judgment, the plaintiff may cause a certified copy of the record thereof to be recorded in the office of the clerk of the town in which such real estate or other property is situated. Thereupon the same shall be holden for the amount due upon such judgment, with the costs of such copy and recording the same, as if it had been mortgaged for the payment thereof, from the time of the visible commencement of work or delivery of materials, subject, however, to the priorities provided in section 1921 of this title, and the plaintiff may obtain possession and foreclose the defendant's equity of redemption as in case of a mortgage.

9 V.S.A. § 1925 (2008).

**\*4** *Id.* at 83.

A party seeking enforcement of a contractor's lien must be scrupulous in adhering to the procedures set forth in the statute. *See Goodro v. Tarkey,* 112 Vt. 212, 214, 22 A.2d 509 (1941) ("[T]he right to acquire and enforce mechanic's liens is a creature of and dependent upon statutes."). An early Vermont Supreme Court decision, *Piper v. Hoyt,* 61 Vt. 539, 17 A. 798 (1889), observed:

The mechanic's lien enactment provides a special remedy in favor of a particular person or class of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
**(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))**

persons. One of the steps is taking out a writ, but that in itself is not special. It could have been done as well without this statute, in common with other creditors. The object of the statute is security, and the effect is a preference. The favored creditor should therefore be held to a reasonably strict compliance. In this case the attachment was more than three months after the lien was filed. If, therefore, the debt was due when the lien was filed, the attachment was too late to preserve the lien.

*Id.* at 539, 17 A. 798. Almost a century later, this Court echoed the importance of complying with the contractor's lien statutory prerequisites:

Vermont's statutory contractor's lien exists the moment a contractor commences "visible" work or supplies materials to real property. It is inchoate until further steps are taken toward perfection, but nevertheless, it exists, and an intervening bankruptcy cannot change it. But it may be lost by failure of perfection.

*Town of Colchester v. Hinesburg Sand & Gravel, Inc. (In re: APC Const., Inc.),* 112 B.R. 89, 125 (Bankr.D.Vt.1990).

## II. Validity of Naylor's Contractor's Lien

There is no dispute that Naylor followed all of the steps required by the state statute to create and perfect his contractor's lien. He: (i) provided materials and improvements pursuant to a contract that gave rise to a contractor's lien under 9 V.S.A. § 1921; (ii) perfected that contractor's lien by filing a notice of contractor's lien in the Winooski land records that satisfied the criteria established by 9 V.S.A. §§ 1921 and 1923; and (iii) timely moved to enforce the contractor's lien by filing suit in Chittenden Superior Court, and obtained a writ of attachment within 180 days of filing the notice of lien, as mandated by 9 V.S.A. § 1924. The Court finds that Naylor obtained and perfected a contractor's lien against the Debtors' property, in full compliance with article 9 of the Vermont statutes.

The thrust of the Debtors' Motion is that

Naylor's contractor's lien expired before he could foreclose it. They are correct. Naylor admits that he did not record a certified copy of the February 22, 2006 Chittenden Superior Court Judgment within five months of obtaining that Judgment. It is this Court's determination that, as a result of Naylor's failure to comply with the statutory recording deadline, the state court judgment does not have "the force of a mortgage, and a right of foreclosure for nonpayment" as it would have had if Naylor had complied with the statutory requirements. *See Filter Equip. Co.,* 142 Vt. at 502, 458 A.2d at 1092 (citing 9 V.S.A. § 1925). This determination is consistent with holdings in cases where a party did not comply with other provisions of the contractor's lien statute. *See Wardwell v. Metilly,* 253 B.R. 512, 513 (D.Vt.2000) (holding that if contractor did not comply with § 1924 in filing action to perfect lien within three months from filing lien in town clerk's office, the lien is lost—"no statutory lien existed"); *Filter Equip. Co.,* 142 Vt. at 502, 458 A.2d 1091 (failure to file an action to perfect lien within three months from filing lien results in lapse of lien for failure to perfect); *Piper,* 61 Vt. at 540, 17 A. 798 (failure to perfect recorded notice of lien by obtaining writ of attachment bars the in rem action and the lien is lost). *See also Obuchowski v. Entis (In re Robert),* 2007 WL 2406926 at * 4–5 (Bankr.D.Vt. Aug.17, 2007) (creditor's failure to obtain state court judgment, and his release of his contractor's lien, rendered writ of attachment a nullity).

*5 In his opposition papers,[FN12] Naylor acknowledges that he did not file a copy of his judgment in the land records within five months of the judgment date,[FN13] but claims there is an "excellent reason" why he has not yet done so: "due to debtor's appeal to the Vermont Supreme Court, he has not yet been issued a *final judgment* " (doc. # 25) (emphasis in original). Naylor's position is that his failure to record the Superior Court Judgment he obtained against the Debtors within five months of obtaining it is not fatal because he was not required to record the judgment until five months after it became final, and since the state

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))

court case was on appeal, the Judgment had not yet become final. *Id.* at p. 9. In this regard, Naylor claims that he "has yet to be issued a certified copy of his judgment, certified by the Clerk of the Chittenden Superior Court that the same has become final, all as required by the provisions of 12 V. S.A. § 2904," FN14 most likely because "the remand order of the Vermont Supreme Court provided that the trial court consider Naylor's request for an award of all post-judgment attorney's fees provided for in [the Prompt Payment Act]." *Id.* He adds that following remand to the Superior Court from the Supreme Court, he had asked that a final, certified judgment be issued; that request was denied; he filed a motion in the Supreme Court asking that the Superior Court be directed to issue such an order, and that request was also denied. *Id.* Naylor asserts that, as a result, he does not yet have a certified final judgment, which he views as a "condition precedent" to recording the Superior Court Judgment in the land records. *Id.*

> **FN12.** Naylor's opposition papers focus primarily on what he alleges to be the Debtors' and their attorney's improper conduct and the exorbitant costs he has incurred in pursuing his remedies, including two "involuntary trips to Bankruptcy Court" in connection with the Debtors' request for the relief sought in their Motion (doc. # 25, ¶ 1). What is disturbing to the Court, however, is Naylor's and his attorney's unconstrained animosity towards the Debtors and their attorney, as reflected in his papers. For example: (1) he accuses the Debtors' attorney of "acting in collusion with the attorney for the title carrier" who issued an opinion letter in connection with the Debtors' granting of a mortgage to Aegis Lending (*id.* ¶ 3); (2) he describes the Debtors and their attorney as being "engaged in a patent abuse of the law by bringing yet another frivolous pleading, a pleading that is clearly impermissible under the law"; and (3) he claims that he

"should receive an award for the attorney's fees incurred by him in opposing yet one more frivolous pleading by this debtor and her various attorneys. These frivolous pleadings have been filed by the debtor and her attorneys unremittingly through the proceedings in three different courts ...." (*id.* ¶ 5). The Court takes this opportunity to caution Naylor and his attorney against making improper and unsupported personal attacks against the Debtors and Debtors' attorney in their papers before this Court.

> **FN13.** Although Naylor did not raise the argument, the Court points out that there were seven weeks between issuance of the Superior Court Judgment and the Debtors' filing of their bankruptcy petition, and that there was a five week period after relief from stay was granted and the end of the five month period allowed by § 1925, during which he could have recorded the Judgment.

> **FN14. Section 2904**, entitled "Recording," provides:

>> A judgment creditor may record a judgment lien at any time within eight years from the date the judgment becomes final in the town clerk's office of any town where real property of the debtor is located. Recording shall consist of filing a copy of the judgment with date when it became final, certified by the clerk of the court issuing the judgment. The certification shall be recorded by the town clerk in the land records.

>> 12 V.S.A § 2904 (2008).

Naylor also argues that 12 V.S.A. § 2901, found in the chapter of the Vermont Statutes devoted to Judgment Liens, provides that a "final judgment" issued in a civil action "shall constitute a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

lien on any real property of a judgment debtor," and specifies the requirements for recording such a final judgment— *i.e.,* that the judgment must be final, certified by the clerk of the court, and then recorded. Against that statutory background, Naylor frames his argument that the "judgment" referred to in 9 V.S.A. § 1925, that must be recorded "within five months after the date of such [state court] judgment ..." is the same "final judgment" in § 2904. He posits:

> There is no known case involving the foreclosure of a judgment that has not become final nor could there be since such an attempt would give rise to a slander of title action by the defendant therein. Since this section of the statute [9 V.S.A. § 1925] refers to a foreclosure of the judgment and since the foreclosure of a judgment cannot take place before it becomes final, of necessity the legislature was referring to the foreclosure of final judgments and the recording requirements therein pertain to final judgment, not inchoate ones.

> (Doc. # 25, p. 13).

The Court declines to read a finality requirement from a different title of Vermont law into the Contractor's Lien Statute. In *In re Ahokas,* 361 B.R. 54 (Bankr.D.Vt.2007), the Debtor asserted that a recorded judgment was defective because it was not marked "final." There, this Court quoted the appellate decision issued in *Rainbow Trust,* which, when applied here, disposes of Naylor's finality argument:

> **\*6** Pursuant to § 1925, [the Creditor] also properly recorded the Judgment within the five month statutory period. As noted by the bankruptcy court, the Judgment was not required to be either final or contain a notation as to the date of its finality.

*Ahokas,* 361 B.R. at 65 n. 9 (quoting *Rainbow Trust,* 216 B.R. at 83 n. 5). Even if there were no such case law, one of the principal axioms of statutory construction is that "absent clear evidence of

a contrary legislative intent, a statute should be interpreted according to its plain language." *U.S. v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). We are aware of no legislative intent, and Naylor cites none, that would require 12 V.S .A. § 2904's finality requirement to be read into 9 V. S.A. § 1925. If the Vermont Legislature had intended to have § 2904 apply to a contractor's lien, it could easily have referred to that recording requirement in Article 9 that delineates the procedure for obtaining, perfecting, and enforcing a contractor's lien. Or, it could have included the word "final" before the word "judgment" in § 1925. It did neither: it merely refers back to "such judgment" obtained as a result of filing an action to enforce lien in § 1924. To stretch the plain language of § 1925 to read in the qualifier "final" before the word "judgment" would violate the plain language rule of statutory interpretation. *See Weale v. Lund,* 180 Vt. 551, 552, 904 A.2d 1191, 1193–94 (2006) ("In general, [the court] will not read something into a statute that is not there unless it is necessary to make the statute effective."). In addition, Naylor's reading would defeat the strict and expeditious time requirements in the Contractor's Lien Statute as it would allow a party to rely on the eight year time frame for recording a final judgment provided in 12 V.S.A. § 2904, when seeking to enforce a contractor's lien pursuant to 9 V.S.A. § 1925.

Naylor's slander of title argument—if he had recorded the judgment before it was final, he would have been liable for slander of title—is equally unconvincing. The essence of that tort

> is the publication of an assertion that is derogatory to the plaintiff's title to property in an effort to prevent others from dealing with the plaintiff. To prove slander of title, a plaintiff must prove that a defendant falsely published a statement concerning plaintiff's title that caused special damages to the plaintiff and that defendant acted with malice.

*Wharton v. Tri–State Drilling & Boring,* 175 Vt. 494, 497, 824 A.2d 531, 536–37 (2003).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))

Naylor's speculation is unfounded, as he does not assert that he would have been acting with malice if he recorded the Judgment "prematurely," or that the Debtors would suffer special damages from his recording of the Judgment.

To recapitulate: Vermont's Contractor's Lien Statute appears intended to balance the right of the contractor to an *in rem lien* to secure its payment against the due process rights of all other parties who have or might acquire an interest in the subject property. The contractor must provide notice of its claim and meticulously follow a process to create, perfect, and enforce the lien. The first step in the process is creating a lien by filing a notice of lien pursuant to 9 V. S.A. § 1921(a) and (c). Naylor complied with the statute: he filed a notice of lien, including the required memorandum describing the basis of his claim, on September 28, 2004. This put the world on notice of his claim against the Property, as required by 9 V.S.A. § 1923. The second step in the process is that the contractor must, within 180 days of filing the notice of lien, commence an action in state court to enforce the lien, pursuant to 9 V.S.A. § 1924. This action is "not an ordinary action of a creditor against a debtor, but a special action which the law makes a necessary step in the enforcement of the [contractor's] lien." *Goodro,* 112 Vt. at 216, 22 A.2d 509. Naylor satisfied this requirement by timely commencing a lawsuit in Chittenden Superior Court, during the course of which he obtained a Writ of Attachment and Order of Approval of Writ of Attachment in March 2005. Naylor timely recorded the Writ in the Winooski land records. He also obtained a judgment from the Superior Court in February 2006. This put the world on notice (including all parties with an interest in the Property) of a judicial determination of the amount of his alleged lien. The final step of the process is that the contractor must record a certified copy of the judgment, in the office of the clerk of the town where the property is located, within five months after obtaining the judgment. This step transforms a claim under the contractor's lien law from what would otherwise have been a "regular"

judgment, effective as of the date it is recorded, into a lien that is given effect as if it had been obtained on the date of visible commencement of the work on the property. *See* 9 V. S.A. § 1925. Naylor failed to comply with this final step. As a result, the contractor's lien that he had worked so hard to earn and create, expired, leaving him with a garden variety breach of contract judgment.

**\*7** The Court concludes that the Contractor's Lien Statute requires that the contractor record the judgment within five months of obtaining it, without regard to whether it is final; and Naylor's contractor's lien expired once five months had passed after the Chittenden Superior Court issued its Judgment and Naylor failed to record it, pursuant to § 1925. Therefore, Naylor's contractor's lien on the Debtors' Property expired prior to the Debtors' bankruptcy filing.

## III. The Nature of Naylor's Judgment and Its Vulnerability to Avoidance under Bankruptcy Law

The Court must now address how the expiration of the lien affects the Chittenden Superior Court Judgment in order to determine the nature and validity of that Judgment in the context of a bankruptcy case.

The Judgment recited that Naylor was entitled to $42,594.02 in damages based upon breach of contract and the Prompt Payment Act, plus interest and penalties. It did not specify that any part of that Judgment related to the contractor's lien. However, if Naylor had complied with the Contractor's Lien Statute, and the contractor's lien not expired, a portion of the judgment could have been enforced pursuant to the contractors' lien law. *See Ahokas,* 361 B.R. at 64. How, then, does the bankruptcy court assess the state court Judgment, given the expiration of the contractor's lien? The Vermont courts have observed: "[t]he object of the [contractor's lien] statute is security and the effect is a preference not available in an ordinary contractor's action." *Reynolds v. Clapper,* 132 Vt. 188, 190, 318 A.2d 173, 175 (1974). The *Reynolds* Court commented

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
**(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))**

that although the creditor in that case had filed an attachment too late to preserve the contractor's lien, the underlying action did not necessarily abate because of that failure to comply with the statutory timeline. The court cited *Goodro,* 112 Vt. at 217, 22 A.2d 509, for this proposition:

> Since the form of an action may be the same regardless of whether it seeks a judgment in personam or in rem (citing cases) what we have said above does not contradict the holding in *Piper v. Hoyt,* [61 Vt. 539 (1889) ]to the effect that a lien claimant who was in privity with the owner of the property ... and who failed to meet a requirement of the lien law in bringing his action might obtain a personal judgment therein, but the action would be ineffective for enforcing the lien.

*Reynolds,* 132 Vt. at 190–91, 318 A.2d at 175. In other words, even though a proponent fails to comply with the requirements of the contractor's lien law in some fashion, rendering the contractor's lien ineffective, the underlying cause(s) of action (in this case, breach of contract and Prompt Payment Act) remain viable. This is so because the contractor's lien is, in essence, "a special statutory right. It is a security interest in the nature of a mortgage, available at law, effecting a preference. It provides for an equity of redemption and operates against the property." *Woodbury Lumber v. McIntosh,* 125 Vt. 154, 155, 211 A.2d 240, 242 (1965). While the in rem cause of action no longer exists, the *in personam* cause of action is not affected. Accordingly, Naylor will have an enforceable judgment lien against the Debtors' Property if and when he records his judgment in compliance with 12 V.S.A. § 2904.

**\*8** If Naylor does record his Superior Court Judgment, the next question is whether it will be subject to avoidance under bankruptcy law. The lien arising from the recording of the Judgment would be a judicial lien, defined in the Code as "a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(36). A judicial lien may be avoided in bank-

ruptcy if it impairs a debtor's homestead exemption. *See* § 522(f)(1). The Bankruptcy Code sets forth the following computation to measure whether, and the extent to which, a lien impairs an exemption:

> (A) For purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> (i) the lien;
>
> (ii) all other liens on the property; and
>
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

§ 522(f)(2)(A). As the Second Circuit has observed,

> § 522(f) defines 'impair[ment]' as the amount by which the sum of (a) the lien whose avoidance is sought, (b) all other liens, and (c) the amount of the exemption 'exceeds the value that the debtor's interest in the property would have in the absence of any liens.' § 522(f)(2)(A). The purpose of allowing avoidance of such liens is to 'protect [ ] the debtor's exemptions, his discharge, and thus his fresh start.' *S.Rep. No. 95–989,* at 76, reprinted in 1978 U.S.C.C.A.N. at 5862.

*In re Scarpino,* 113 F.3d 338 (2d Cir., 1997).

In this case, the value of the Property, as provided in Schedule A, is $210,000. The judgment lien (should Naylor record the Superior Court Judgment Order) amounts to $42,594.02 (plus penalties and interest, which were not calculated). All other liens on the property total $186,000 (the Aegis $182,000 lien and the $6,000 VHCB lien). Together, the Debtors could claim a homestead exemption of $75,000 if there were no liens on the property. *See* 27 V.S.A. § 101. Applying the § 522(f)(2)(A) formula, the sum of Naylor's judgment lien ($42,594.02), the other liens on the Property ($186,000), and the Debtors' maximum homestead

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)
**(Cite as: 2008 WL 2857163 (Bkrtcy.D.Vt.))**

exemption ($75,000) is $303,594.02. The value of the Debtors' interest in the Property, as set forth in Schedule A of the Debtors' bankruptcy schedules, is $210,000. Since the sum of the liens and homestead exemption exceeds the property's value by $93,594.02, Naylor's judicial lien impairs the Debtors' homestead exemption. Since Naylor's judgment is for a sum less than the amount of the impairment computed under this formula, Naylor's state court Judgment may be avoided in its entirety. *See Corson v. Fidelity & Guaranty Ins. Co. (In re Corson),* 206 B.R. 17, 21–22 (Bankr.D.Conn.1997) (providing steps for calculating whether lien impairs homestead exemption).

**IV. Naylor Has No Allowed Secured Claim in These Bankruptcy Cases**

As a consequence of the Debtors being able to avoid the judicial lien under § 522(f), the Court need not address if, or the extent to which, the Debtors may bifurcate Naylor's claim under § 506(d). Naylor has no secured claim.

**V. Naylor's Remaining Arguments**

**\*9** Naylor makes a variety of unsupported legal assertions (in the "Facts" section of his Memorandum), including assertions that the validity of his lien has already been determined in this Court by virtue of the Debtors' withdrawal of their original motion to avoid lien (doc. # 25, ¶ 7), and that "Debtor is prohibited by law from filing, then withdrawing, her motion to avoid Naylor's lien and then renewing that motion only after Naylor has successfully defended her appeal in state court at great cost to Naylor in specific reliance on this Court's [relief from stay] Order authorizing him to do so" (*id.,* ¶ 10). He cites no case law to support the proposition that the withdrawal of a motion is an admission that the motion is without merit, or that the failure to litigate a motion on its merits precludes a party from raising the question at a later date. The Court has considered these "arguments" and finds them to be unsubstantiated by case law, inapposite to the legal issue presented, and without merit. It has considered all other arguments asserted by Naylor, as

well, and finds them to be unavailing.

*CONCLUSION*

The Court finds that Naylor's failure to record a certified copy of his February 2006 Chittenden Superior Court Judgment within five months of obtaining that judgment, as required by 9 V.S.A. § 1925, caused his contractor's lien to expire. Nevertheless, Naylor has a valid judgment based upon his breach of contract and Prompt Payment Act causes of action. Should he record his Judgment, it would constitute a judicial lien which is avoidable *in toto* under § 522(f) as impairing the Debtors' homestead exemption. Consequently, the Court finds that Naylor has no allowed secured claim in these two bankruptcy cases, but rather is limited to holding a general unsecured claim. Based upon these findings, the Court grants the Debtors' motion to avoid Naylor's lien under § 522(f) and overrules Naylor's objection to that motion in all respects.

This constitutes the Court's findings of fact and conclusions of law.

***ORDER ON DEBTORS' MOTION TO DETERMINE SECURED STATUS OF, OR AVOID, THE LIEN OF JAMES A. NAYLOR D/B/A NAYLOR CONSTRUCTION***

COLLEEN A. BROWN, United States Bankruptcy Judge.

For the reasons set forth in the memorandum of decision of even date, IT IS HEREBY ORDERED that the lien of James Naylor, d/b/a Naylor Construction is hereby avoided as a judicial lien that impairs the Debtors' exemption.

**SO ORDERED.**

Bkrtcy.D.Vt.,2008.
In re DuCharme
Not Reported in B.R., 2008 WL 2857163 (Bkrtcy.D.Vt.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

412 B.R. 646
**(Cite as: 412 B.R. 646)**

**H**

United States District Court,
D. Vermont.
In re Tammy J. CUSSON, et al., Debtors.
James A. Naylor d/b/a Naylor Construction, Appellant,
v.
Tammy J. Cusson and Dorothy Ducharme, Appellees.

Nos. 2:08–CV–057, 2:08–CV–058.
April 3, 2009.

**Background:** Chapter 7 debtors moved to reopen their bankruptcy case in order to bring proceeding for avoidance of contractor's lien. After granting motion to reopen, the Bankruptcy Court, Colleen A. Brown, J., 2008 WL 2857163, entered judgment in favor of debtors on lien avoidance issue, and contractor appealed.

**Holdings:** The District Court, William K. Sessions, III, Chief Judge, held that:

(1) order that granted debtors' motion to reopen case to allow them an opportunity to move for avoidance of contractor's lien, but that did not resolve question of whether lien could be avoided, was not "final order," from which appeal would lie;

(2) bankruptcy court did not abuse its discretion in granting motion to reopen;

(3) contractor failed to "strictly adhere" to procedural requirements of Vermont contractor's lien statutes, such that his lien had expired; and

(4) mere fact that the prepetition judgment that contractor had obtained on his lien was subject of pending appeal, and thus allegedly lacked finality, did not affect five-month window that contractor had under Vermont law to perfect his lien by recording judgment.

Affirmed.

West Headnotes

**[1] Bankruptcy 51 ☞3767**

51 Bankruptcy
 51XIX Review
  51XIX(B) Review of Bankruptcy Court
   51k3766 Decisions Reviewable
    51k3767 k. Finality. Most Cited Cases

**Bankruptcy 51 ☞3772**

51 Bankruptcy
 51XIX Review
  51XIX(B) Review of Bankruptcy Court
   51k3772 k. Petition for Leave; Appeal as of Right; Certification. Most Cited Cases

Order that granted debtors' motion to reopen their Chapter 7 case to allow them an opportunity to move for avoidance of contractor's lien, but that did not resolve question of whether lien could be avoided, was not "final order," from which appeal would lie as of right; to pursue appeal from order reopening case, contractor should not have filed notice of appeal, but should have instead sought leave to pursue appeal from bankruptcy court. 11 U.S.C.A. § 350(b); 28 U.S.C.A. § 158(a)(1).

**[2] Bankruptcy 51 ☞3767**

51 Bankruptcy
 51XIX Review
  51XIX(B) Review of Bankruptcy Court
   51k3766 Decisions Reviewable
    51k3767 k. Finality. Most Cited Cases

In bankruptcy context, "final order," from which appeal will lie as of right, is one which finally disposes of discrete disputes within larger case. 28 U.S.C.A. § 158(a)(1).

**[3] Bankruptcy 51 ☞3767**

51 Bankruptcy
 51XIX Review
  51XIX(B) Review of Bankruptcy Court
   51k3766 Decisions Reviewable
    51k3767 k. Finality. Most Cited Cases

**(Cite as: 412 B.R. 646)**

"Final order," from which appeal will lie as of right, ends litigation on merits and leaves nothing for court to do but execute judgment. 28 U.S.C.A. § 158(a)(1).

**[4] Bankruptcy 51 ⚖3784**

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3784 k. Discretion. Most Cited Cases

Bankruptcy court's decision to reopen bankruptcy cases is reviewed for plain abuse of discretion. 11 U.S.C.A. § 350(b).

**[5] Bankruptcy 51 ⚖3444.50(3)**

51 Bankruptcy
    51XI Liquidation, Distribution, and Closing
        51k3444 Reopening
            51k3444.50 Proceedings
                51k3444.50(3) k. Time for Proceeding; Laches. Most Cited Cases

Bankruptcy court's decision to reopen bankruptcy case is subject to equitable defenses, such as laches. 11 U.S.C.A. § 350(b).

**[6] Bankruptcy 51 ⚖3444.30(4)**

51 Bankruptcy
    51XI Liquidation, Distribution, and Closing
        51k3444 Reopening
            51k3444.30 Grounds and Objections
                51k3444.30(4) k. Avoidance of Liens.
Most Cited Cases

**Bankruptcy 51 ⚖3444.50(3)**

51 Bankruptcy
    51XI Liquidation, Distribution, and Closing
        51k3444 Reopening
            51k3444.50 Proceedings
                51k3444.50(3) k. Time for Proceeding; Laches. Most Cited Cases

Bankruptcy court may grant motion to reopen case for purpose of hearing a lien avoidance motion, subject to defense of laches. 11 U.S.C.A. §

350(b).

**[7] Bankruptcy 51 ⚖3444.30(4)**

51 Bankruptcy
    51XI Liquidation, Distribution, and Closing
        51k3444 Reopening
            51k3444.30 Grounds and Objections
                51k3444.30(4) k. Avoidance of Liens.
Most Cited Cases

Bankruptcy court did not abuse its discretion in granting debtors' motion to reopen their Chapter 7 case to allow them to bring a motion to avoid a contractor's lien on their residence that was not perfected when petition was filed, though contractor alleged that debtors' delay in seeking to avoid lien had prejudiced him, by causing him to expend funds to successfully defend, in state appellate court, the prepetition judgment that he had obtained against debtors, only to be faced with prospect of lien avoidance motion before bankruptcy judge after debtors lost before state appellate court, where contractor was itself responsible for delay of which it complained, in moving for relief from stay to allow state court appeal to continue. 11 U.S.C.A. § 350(b).

**[8] Equity 150 ⚖72(1)**

150 Equity
    150II Laches and Stale Demands
        150k68 Grounds and Essentials of Bar
            150k72 Prejudice from Delay in General
                150k72(1) k. In General. Most Cited Cases

"Laches" is a failure to assert right for an unreasonable and unexplained period of time, when the delay has been prejudicial to adverse party, so as to make it inequitable to enforce the right.

**[9] Equity 150 ⚖72(1)**

150 Equity
    150II Laches and Stale Demands
        150k68 Grounds and Essentials of Bar
            150k72 Prejudice from Delay in General

© 2012 Thomson Reuters. No Claim to Orig. U.S. Gov. Works.

150k72(1) k. In General. Most Cited Cases

Laches does not arise from delay alone, but from delay that works disadvantage to another.

**[10] Bankruptcy 51 ⬅➞3444.50(1)**

51 Bankruptcy
    51XI Liquidation, Distribution, and Closing
        51k3444 Reopening
            51k3444.50 Proceedings
                51k3444.50(1) k. In General. Most Cited Cases

**Bankruptcy 51 ⬅➞3444.50(4)**

51 Bankruptcy
    51XI Liquidation, Distribution, and Closing
        51k3444 Reopening
            51k3444.50 Proceedings
                51k3444.50(4) k. Evidence. Most Cited Cases

Contractor, as party asserting laches defense to debtors' motion to reopen their Chapter 7 case to pursue avoidance of contractor's lien, had burden of establishing factual basis for this laches defense, including fact that he was prejudiced by debtors' delay; bankruptcy court, in order to grant motion over contractor's objection, did not have to specifically find lack of prejudice. 11 U.S.C.A. § 350(b).

**[11] Bankruptcy 51 ⬅➞2583**

51 Bankruptcy
    51V The Estate
        51V(D) Liens and Transfers; Avoidability
            51k2583 k. Mechanics' or Laborers' Liens. Most Cited Cases

**Bankruptcy 51 ⬅➞2584**

51 Bankruptcy
    51V The Estate
        51V(D) Liens and Transfers; Avoidability
            51k2584 k. Judicial Liens; Attachment and Garnishment. Most Cited Cases

Existence of statutory contractors' liens and ju-

dicial liens that affect debtor's real property are questions of state law.

**[12] Bankruptcy 51 ⬅➞2534**

51 Bankruptcy
    51V The Estate
        51V(C) Property of Estate in General
            51V(C)1 In General
                51k2534 k. Effect of State Law in General. Most Cited Cases

Property rights in assets of debtor's estate are determined by state law.

**[13] Mechanics' Liens 257 ⬅➞116**

257 Mechanics' Liens
    257III Proceedings to Perfect
        257k116 k. Nature and Form in General. Most Cited Cases

Under Vermont law, in order to be entitled to statutory contractor's lien against real property, contractor must strictly comply with procedural steps set forth in Vermont statutes. 9 V.S.A. §§ 1921-1925.

**[14] Mechanics' Liens 257 ⬅➞173**

257 Mechanics' Liens
    257IV Operation and Effect
        257IV(A) Amount and Extent of Lien
            257k165 Time of Accrual or Commencement
                257k173 k. Relation Back. Most Cited Cases

Under Vermont law, timely compliance by contractor with procedural requirements of contractor's lien statutes provides contractor with equity of redemption and preference over other creditors, i.e., a statutory lien, the perfection of which will relate back to time of recording of notice of lien or visible commencement of work. 9 V.S.A. §§ 1921-1925.

**[15] Mechanics' Liens 257 ⬅➞1**

257 Mechanics' Liens

© 2012 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

257I Nature, Grounds, and Subject-Matter in General
257k1 k. Nature of Lien in General. Most Cited Cases

Contractors' liens are creatures of Vermont law, and their existence depends entirely on Vermont statute which created them.

## [16] Mechanics' Liens 257 ⬗116

257 Mechanics' Liens
257III Proceedings to Perfect
257k116 k. Nature and Form in General. Most Cited Cases

Contractor who fails to comply with statutory procedures for obtaining and perfecting a contractor's lien risks the expiration of his lien. 9 V.S.A. §§ 1921-1925.

## [17] Bankruptcy 51 ⬗2157

51 Bankruptcy
51II Courts; Proceedings in General
51II(B) Actions and Proceedings in General
51k2157 k. Limitations and Time to Sue; Computation. Most Cited Cases

## Bankruptcy 51 ⬗2397(1.5)

51 Bankruptcy
51IV Effect of Bankruptcy Relief; Injunction and Stay
51IV(B) Automatic Stay
51k2394 Proceedings, Acts, or Persons Affected
51k2397 Mortgages or Liens
51k2397(1.5) k. Acts Excepted from Stay. Most Cited Cases

If bankruptcy intervenes after contractor who performed work on debtors' property has obtained judgment on its lien, then automatic stay will not bar postpetition perfection of contractor's lien by recordation of its existing judgment; however, if bankruptcy intervenes prior to judgment in action to enforce lien, then automatic stay will bar the postpetition enforcement of lien and toll statutory peri-

od for enforcement. 11 U.S.C.A. § 362(a, b).

## [18] Bankruptcy 51 ⬗2397(1.5)

51 Bankruptcy
51IV Effect of Bankruptcy Relief; Injunction and Stay
51IV(B) Automatic Stay
51k2394 Proceedings, Acts, or Persons Affected
51k2397 Mortgages or Liens
51k2397(1.5) k. Acts Excepted from Stay. Most Cited Cases

Contractor who obtained judgment on his lien prior to commencement of Chapter 7 case by homeowners for whom he had performed work was not barred by automatic stay from recording judgment postpetition, in order to perfect statutory contractor's lien to which he was entitled under Vermont law, and as long as contractor recorded his judgment within five-month window set forth in Vermont statute, its perfection would relate back as provided under Vermont law. 11 U.S.C.A. § 362(b)(3); 9 V.S.A. § 1925.

## [19] Bankruptcy 51 ⬗2577

51 Bankruptcy
51V The Estate
51V(D) Liens and Transfers; Avoidability
51k2577 k. Post-Petition Perfection. Most Cited Cases

## Mechanics' Liens 257 ⬗235

257 Mechanics' Liens
257VIII Extinguishment
257k235 k. Delay in Assertion or Enforcement of Lien. Most Cited Cases

## Mechanics' Liens 257 ⬗292

257 Mechanics' Liens
257XI Enforcement
257k292 k. Execution and Enforcement of Judgment in General. Most Cited Cases

Contractor who, despite not being stayed from

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(Cite as: 412 B.R. 646)**

perfecting, postpetition, the contractor's lien that he had obtained against homeowners who filed for Chapter 7 relief, did not record the prepetition judgment that he obtained on his lien within five-month window permitted under Vermont law failed to "strictly adhere" to statutory procedures, such that his lien had expired. 11 U.S.C.A. § 362(b)(3); 9 V.S.A. § 1925.

**[20] Statutes 361** ⟲212.7

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k212 Presumptions to Aid Construction
            361k212.7 k. Other Matters. Most Cited Cases

It is cardinal rule of statutory construction that courts will not presume something that legislature has not plainly stated in statute.

**[21] Mechanics' Liens 257** ⟲292

257 Mechanics' Liens
   257XI Enforcement
      257k292 k. Execution and Enforcement of Judgment in General. Most Cited Cases

Mere fact that the prepetition judgment that contractor had obtained on his lien was subject of pending appeal, and thus allegedly lacked finality, did not affect five-month window that contractor had under Vermont law to perfect his lien by recording judgment; there was no requirement in Vermont statute that judgment had to be "final" in order for this five-month period to begin to run. 9 V.S.A. § 1925.

**[22] Bankruptcy 51** ⟲2583

51 Bankruptcy
   51V The Estate
      51V(D) Liens and Transfers; Avoidability
         51k2583 k. Mechanics' or Laborers' Liens. Most Cited Cases

**Mechanics' Liens 257** ⟲292

257 Mechanics' Liens
   257XI Enforcement
      257k292 k. Execution and Enforcement of Judgment in General. Most Cited Cases

Even assuming that five month period that contractor had under Vermont law to perfect his contractor's lien by recording judgment that he had obtained on lien did not begin to run until judgment became final, and that this did not occur until judgment was affirmed on appeal, contractor's failure to record his judgment even within five months of the Vermont Supreme Court's affirmance of judgment on lien meant that lien had expired without being perfected, for purposes of assessing contractor's lien rights in homeowners' Chapter 7 case. 11 U.S.C.A. § 362(b)(3); 9 V.S.A. § 1925.

**[23] Bankruptcy 51** ⟲2583

51 Bankruptcy
   51V The Estate
      51V(D) Liens and Transfers; Avoidability
         51k2583 k. Mechanics' or Laborers' Liens. Most Cited Cases

In assessing lien rights of contractor who obtained judgment on his contractor's lien prior to commencement of Chapter 7 case by homeowners for whom he had done work, but who had not perfected his lien by recording judgment before bankruptcy case intervened, bankruptcy court properly considered contractor's postpetition acts, and specifically whether he recorded judgment within five-month window provided by Vermont law, as determining whether lien was perfected on petition date pursuant to "relation back" provision of Vermont contractor's law. 11 U.S.C.A. § 362(b)(3); 9 V.S.A. § 1925.

**[24] Bankruptcy 51** ⟲2576

51 Bankruptcy
   51V The Estate
      51V(D) Liens and Transfers; Avoidability
         51k2576 k. Perfection or Recordation Under State Law, in General. Most Cited Cases

If creditor possesses a prepetition interest in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

412 B.R. 646
**(Cite as: 412 B.R. 646)**

debtor's property, and state law establishes a time period for perfection of lien based on that interest, lien does not lose its preferred standing by reason of fact that it is not perfected until after commencement of bankruptcy case, as long as it is perfected within time period established by state law. 11 U.S.C.A. § 362(b)(3).

**[25] Federal Courts 170B ☞13**

170B Federal Courts
   170BI Jurisdiction and Powers in General
     170BI(A) In General
       170Bk12 Case or Controversy Requirement
         170Bk13 k. Particular Cases or Questions, Justiciable Controversy. Most Cited Cases

Whether Chapter 7 debtors could avoid lien, in aid of their homestead exemption rights, were judgment creditor to obtain such a lien by recording his judgment was issue not ripe for review where, as of date of court hearing, creditor had yet to record his judgment. 11 U.S.C.A. § 522(f).

**[26] Mechanics' Liens 257 ☞187**

257 Mechanics' Liens
   257IV Operation and Effect
     257IV(B) Property, Estates, and Rights Affected
       257k187 k. Estate, Right, or Interest Affected in General. Most Cited Cases

Under Vermont law, homeowners could refinance their homestead property while it was encumbered by statutory contractor's lien, in alleged "defiance" of contractor's lien, as long as they disclosed lien to lender. 9 V.S.A. § 1923.

**\*649 *Opinion and Order***

WILLIAM K. SESSIONS, III, Chief Judge.

The appellant, James A. Naylor d/b/a Naylor Construction ("Naylor") appeals from two orders of the United States Bankruptcy Court for the District of Vermont (Brown, J.). This case is a consolidation of those two appeals. FN1 The first order

entered on January 17, 2008 granted the Debtors' motions to reopen their respective bankruptcy cases. (Doc. 25.) The second order entered on July 21, 2008 granted the Debtors' motions to avoid Naylor's lien. (Doc. 61.)

    FN1. There are two bankruptcies at issue in this case. The appellees, Tammy J. Cusson and Dorothy Ducharme (collectively the "Debtors"), are partners who individually filed bankruptcy petitions. Tammy J. Cusson's Chapter 7 case is Bankr.No. 06–10195. Dorothy Ducharme's Chapter 7 case is Bankr.No. 06–10154. All citations contained herein refer to the docket entries in Tammy J. Cusson's cases.

In his appeals, Naylor argues, in short: (1) that the Bankruptcy Court abused its discretion in reopening the Debtors' bankruptcy cases; (2) that the Bankruptcy Court incorrectly construed Vt. Stat. Ann. tit. 9, § 1925 while determining that Naylor's contractors' lien was not valid; (3) that the Bankruptcy Court erroneously considered facts that did not exist at the time the Debtors filed their bankruptcy petitions; and (4) that the Bankruptcy Court incorrectly concluded that the Debtors lawfully refinanced their property even though it was subject to Naylor's contractors' lien. (Br. Of Appellant 11–20.)

The Bankruptcy Court's decision granting the motion to reopen lacked finality, and Naylor's first appeal from it must be dismissed for lack of jurisdiction. Naylor's second appeal, consolidated with the first **\*650** appeal, addresses both the decision to re-open the bankruptcy cases and the decision granting the lien avoidance. Both decisions are **affirmed.** Naylor's pending motions for stay are **dismissed** as moot.

***Factual Background***

The following facts are undisputed unless otherwise noted. The Debtors jointly own a homestead property located at 21 Clifford Street, Winooski, Vermont. On April 1, 2004, the Debtors contracted

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

412 B.R. 646
**(Cite as: 412 B.R. 646)**

with Naylor to replace the concrete foundation supporting their home. Shortly thereafter, Naylor performed most of his obligations under the contract, but the Debtors disputed the amount due under the contract and the quality of some work that Naylor had performed. On September 28, 2004, Naylor filed a Notice of Contractors' Lien ("lien") dated September 27, 2004 against the Debtor's property and recorded it in the Winooski land records at volume 158, page 173. In order to perfect his lien, Naylor sued the Debtors in Chittenden County Superior Court, Docket No. 142–05–CnC, for breach of contract and damages under Vermont's Prompt Payment Act ("VPPA"), Vt. Stat. Ann. tit. 9, §§ 4001–4009 (2006). On March 25, 2005, Naylor obtained a Writ of Attachment and Order of Approval of Writ of Attachment in the amount of $20,000.00. Naylor promptly recorded this Writ in the Winooski land records at volume 162, pages 210–213.

On April 22, 2005, the Debtors refinanced 21 Clifford Street and granted a mortgage for $184,800.00 to Aegis Lending Corporation ("Aegis"). Aegis recorded this mortgage in the Winooski land records at volume 163, pages 341–355. The Debtors placed $20,000.00 from the refinance proceeds into escrow in order to satisfy Naylor's Writ if ever enforced. At this time the Debtors' property had an existing $6000.00 mortgage dated June 12, 1997 in favor of the Vermont Housing and Conservation Board ("VHCB"). The VHCB mortgage is recorded in the Winooski land records at volume 111, page 37.

On February 22, 2006, Naylor obtained a Judgment Order against the Debtors' attached property. The Superior Court awarded Naylor $42,594.92 plus interest and penalties: $25,000.00 due under the contract, $2210.00 in consequential damages, and $15,373.92 in attorney's fees and costs. The judgment included statutory interest at a rate of 12% per year and statutory penalties accruing at 1% per month from August 21, 2004 through February 22, 2006. To date, Naylor has not recorded this judgment in the Winooski land records.

The Debtors appealed from Naylor's judgment to the Vermont Supreme Court on March 23, 2006. A few weeks later, on April 13, 2006, the Debtors individually filed Chapter 7 bankruptcy petitions. As a result of these bankruptcies, Naylor was prevented from taking any action to enforce his judgment pursuant to the automatic stay provision of 11 U.S.C. § 362(a)(2). Thereafter, on May 16, 2006 Naylor moved the Bankruptcy Court for relief from the automatic stay to perfect his lien. (Doc. 9.) The Bankruptcy Court granted Naylor relief from stay on June 13, 2006. (Doc. 14.) During the pendency of their bankruptcies, the Debtors moved to avoid Naylor's lien but voluntarily withdrew the motion. On August 7, 2006, the Bankruptcy Court issued an order discharging the Debtors' bankruptcy cases. (Doc. 17.) Two weeks later, the Bankruptcy Court issued a final decree closing the Debtors' bankruptcy cases. (Doc. 19.)

On September 18, 2007, the Vermont Supreme Court affirmed Naylor's February 22, 2006 judgment in *Naylor v. Cusson (Naylor I),* 182 Vt.627, 940 A.2d 717 (2007) (mem.). Thereafter, Naylor requested **\*651** that the Chittenden County Superior Court issue a final judgment order including post-judgment attorney's fees under the VPPA. This motion was denied on July 16, 2008. Naylor appealed from this denial to the Vermont Supreme Court, and the Vermont Supreme Court affirmed the Superior Court's denial in an unpublished entry order. *Naylor v. Cusson (Naylor II),* No.2008–327, 2009 WL 426429, at *1 (Vt. Feb.4, 2009).

Meanwhile, on November 29, 2007, the Debtors moved the bankruptcy court to re-open their respective Chapter 7 cases. (Doc. 21.) They concurrently moved to determine the secured status of Naylor's lien, and alternatively, to avoid Naylor's lien ("lien avoidance motion"). (Doc. 22.) Naylor opposed both of these motions. (Doc. 23.) After hearing arguments, the Bankruptcy Court re-opened the Debtor's cases on January 18, 2008, and reserved ruling and argument on the lien avoidance motion. (Doc. 25.) Naylor appealed from the order which

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

reopened the bankruptcy cases directly to this Court on January 25, 2008. (Doc. 27.) A few months later, the Bankruptcy Court issued an order and memorandum of decision granting the lien avoidance motion dated July 21, 2008. (Docs. 60 & 61.) Naylor then appealed from this order directly to this Court on July 28, 2008. (Doc. 67.) FN2 On August 4, 2008, Naylor filed an emergency motion for stay of the Bankruptcy Court's July 21, 2008 order with this Court, which was denied without prejudice on September 2, 2008. On October 10, 2008 Naylor renewed his emergency motion for stay of the July 21, 2008 order pending his appeal to this Court.

FN2. The second appeal, docket no. 2:08–cv–181, was consolidated with 2:08–cv–057 and closed on September 30, 2008.

### Discussion

Section 158(a) of Title 28 gives this Court jurisdiction to hear an appeal from a final order of a bankruptcy court from the District of Vermont. 28 U.S.C. § 158(a); see also Fed. R. Bankr.P. 8001(a). However, an appellant may only appeal from an interlocutory order with leave from the bankruptcy court. See Fed. R. Bankr.P. 8001(b); 28 U.S.C. § 158(a)(3).

A bankruptcy court's decision to re-open a bankruptcy case will be upheld absent an abuse of discretion. State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir.1996). This Court will affirm a Bankruptcy Court's "factual findings unless clearly erroneous" and review its legal conclusions regarding lien avoidance de novo. Id. at 1306 (citing Bethpage Fed. Credit Union v. Furio (In re Furio), 77 F.3d 622, 624 (2d Cir.1996)); see also Fed. R. Bankr.P. 8013.

### I.

[1] With respect to Naylor's first appeal, this Court lacks jurisdiction to consider its merits because Naylor did not follow requisite appellate procedure in bringing it. Naylor appealed from the order directly to this Court. However, at the time

Naylor brought his first appeal, the order from which he appealed was interlocutory and not final.

[2][3] A final order "finally dispose[s] of discrete disputes within the larger case." Shimer v. Fugazy (In re Fugazy Express), 982 F.2d 769, 775 (2d Cir.1992) (citations omitted); In re Chateaugay Corp., 880 F.2d 1509, 1511 (2d Cir.1989) (noting that while the concept of finality in bankruptcy matters is more flexible than in ordinary civil litigation, a final order is *652 one which "finally disposes of discrete disputes within the larger case.") (citations omitted). Additionally, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945) (citing St. Louis I.M. & S. Ry. Co. v. S. Express Co., 108 U.S. 24, 28, 2 S.Ct. 6, 27 L.Ed. 638 (1883)).

Here, the Bankruptcy Court's order granted the Debtors an opportunity to request a determination of the lien's secured status or, alternatively, to avoid the lien altogether. The order did not determine the lien's secured status, permit the Debtor's to avoid the lien, nor end the litigation on the merits. Rather, the order provided the Debtor's an opportunity to litigate on the merits. Because the order was not final Naylor should have requested leave from the Bankruptcy Court to appeal from it, but he did not. Therefore, Naylor's first appeal is dismissed.

[4] With respect to Naylor's second appeal this Court reviews the Bankruptcy Court's decision to re-open the Debtors' bankruptcy cases for plain abuse of discretion. In re Chalasani, 92 F.3d at 1307; see also In re Perlman, 116 F.2d 49, 50 (2d Cir.1940).

[5] A bankruptcy court has the discretion to re-open a bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). However, a bankruptcy court's decision to re-open a bankruptcy case is subject to equitable defenses, such as laches. See H.R.Rep. No. 595, 95th Cong., 1st Sess. at 338 (1977);

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

S.Rep. No. 989, 95th Cong., 2d Sess. at 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835, 5963, 6294. A timely filed lien avoidance motion under 11 U.S.C. § 522(f)(1) has been held sufficient cause for re-opening a bankruptcy case under 11 U.S.C. § 350(b). *Matter of Caicedo,* 159 B.R. 104, 105–06 (Bankr.D.Conn.1993); *see also Blake v. Ledan (In re Blake),* 38 B.R. 604, 609 (Bankr.E.D.N.Y.1984) ("Lien avoidance constitutes sufficient cause to re-open a case.").

[6] Additionally, neither section 350(b) nor Bankruptcy Rule 5010 limit when a section 350(b) motion must be filed. 11 U.S.C. § 350(b); Fed. R. Bankr.P. 5010; *cf. Harris v. Warshawsky,* 184 F.2d 660, 662–663 (2d Cir.1950) (permitting a motion to re-open even after a lapse of 12 years). Another provision, Bankruptcy Rule 9024, specifically exempts section 350(b) motions from the one-year time limitation imposed by Federal Rule of Civil Procedure 60(c)(1) for motions to obtain relief from a judgment order. Fed. R. Bankr.P. 9024; *Matter of Caicedo,* 159 B.R. at 106–107. Neither sections 506(d) nor 522(f)(1) of the Bankruptcy Code (the substance of the lien avoidance motion) impose time limitations. *See* 11 U.S.C. §§ 506(d), 522(f)(1). Therefore, a bankruptcy court may grant a section 350(b) motion to re-open a bankruptcy case for the purpose of hearing a lien avoidance motion subject to the defense of laches.

[7] The Bankruptcy Court re-opened the Debtors' bankruptcy cases for sufficient cause—to hear the lien avoidance motion. *See Matter of Caicedo,* 159 B.R. at 105–06. However, Naylor argues that he was entitled to the defense of laches and that the Bankruptcy Court abused its discretion in denying him that defense.

[8][9] "Laches is the failure to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right. Laches does not arise from delay alone, but from delay that works disadvantage to another." **\*653** *Stamato v. Quazzo,* 139 Vt. 155, 423 A.2d 1201, 1203 (1980) (citation omitted).

Naylor alleges that he is entitled to the defense of laches because the Debtors created the delay which unfairly prejudiced him. (Br. Of Appellant 18–19.) Specifically, Naylor argues that the Debtors initially made a lien avoidance motion in bankruptcy court, and then withdrew it; and after such withdrawal, Naylor sought relief from the automatic stay provision of 11 U.S.C. § 362(a)(2) in order to defend his judgment in the Vermont Supreme Court. Then, after losing on appeal, the Debtors re-opened their bankruptcy cases to re-consider their previously withdrawn lien avoidance motion thereby forcing Naylor to defend his lien yet again. As a result of this delay, Naylor claims prejudice.

Naylor's argument is mistaken. Naylor's actions gave rise to the delay which he claims prejudiced him. Naylor did not have to request relief from stay to perfect his contractors' lien. An intervening bankruptcy does not automatically stay the post-petition perfection of a statutory lien that was already in existence at the time the bankruptcy petition was filed. *See Town of Colchester v. Hinesburg Sand & Gravel, Inc. (In re APC Const., Inc.),* 112 B.R. 89, 108–16 (Bankr.D.Vt.1990) (stating that the post-petition perfection of an inchoate statutory lien that came into being prior to the date of petition is not subject to the automatic stay provision of the Bankruptcy Code). Naylor's request for relief from stay permitted the Debtors to continue their appeal in the Vermont Supreme Court. Regardless of the delay the appeal may have created, it was Naylor's failure to perfect his lien that delayed the Debtor's from arguing the merits of their lien avoidance motion as well as provided them with a factual basis to re-open their bankruptcy cases to do so. The maxim "[e]quity helps the vigilant, not the dormant," applies with great force here. *Philbrick v. Johnson,* 91 Vt. 270, 100 A. 110, 112 (1917). Naylor created the delay which he now claims prejudiced him, and he was not vigilant, but dormant, in perfecting his lien.

[10] Additionally, Naylor argues that the Bank-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ruptcy Court was required to, but did not, make an affirmative finding that Naylor would not be prejudiced before it re-opened the Debtors' bankruptcy cases. (Br. Of Appellant 19.) However, Naylor carried the burden of factually establishing his affirmative defense of laches. *See* Fed.R.Civ.P. 8(c) (stating that the defense of laches must be affirmatively pled by the party relying on it); *see also Preston v. Chabot,* 138 Vt. 170, 412 A.2d 930, 931 (1980) ("Laches is an affirmative equitable defense, and the burden is on the party relying on it."). The Bankruptcy Court did not have to make an affirmative finding of non-prejudice. *Preston,* 412 A.2d at 931. "(L)aches is so much a matter of discretion by the lower court that action by that court should not be disturbed unless clearly shown to be wrong." *Laird Props. New England Land Syndicate v. Mad River Corp.,* 131 Vt. 268, 305 A.2d 562, 570 (1973) .

The Bankruptcy Court re-opened the Debtors' bankruptcy cases for a permissible purpose (to afford the Debtors relief by way of hearing their lien avoidance motion). Furthermore, the Bankruptcy Court was not required to make an affirmative finding of non-prejudice before re-opening the Debtors' bankruptcy cases. The burden of establishing prejudice rested with Naylor. Accordingly, the Bankruptcy Court did not abuse its discretion in re-opening the Debtors' bankruptcy cases.

## II.

[11][12] The existence of statutory contractors' liens and judicial liens that affect **\*654** real property are questions of state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Property rights in the assets of a debtor's estate are determined by state law. *Morton v. Nat'l Bank of New York City (In re Morton),* 866 F.2d 561, 563–64 (2d Cir.1989). This Court will apply Vermont law, Vt. Stat. Ann. tit. 9, §§ 1921– 1925 (2006), to determine the validity of Naylor's contractors' lien. *See, e.g., Robinson v. Howard Bank (In re Kors),* 819 F.2d 19, 22 (2d Cir.1987).

[13][14] In granting the lien avoidance motion,

the Bankruptcy Court determined that Naylor did not have a valid contractors' lien as of April 13, 2006 because he failed to perfect his lien in accordance with Vermont law. Under Vermont law contractors are entitled to statutory liens against real property. All that is required of a contractor is strict compliance with the procedural steps set forth under Vermont Law. *See* Vt. Stat. Ann. tit. 9, §§ 1921 –1925; *see also Goodro v. Tarkey,* 112 Vt. 212, 22 A.2d 509, 510 (1941); *Piper v. Hoyt,* 61 Vt. 539, 17 A. 798, 798–799 (1889). Timely procedural compliance with the statute provides diligent contractors with an equity of redemption and a preference over other creditors—a statutory lien. *Woodbury Lumber Co. v. McIntosh,* 125 Vt. 154, 211 A.2d 240, 241–42 (1965). The resulting well-perfected lien "will relate back to the time of recording of a notice of lien or 'visible commencement' of work." *In re APC Constr., Inc.,* 112 B.R. at 117.

[15][16] The necessity of strict compliance with the statute's procedures has been long recognized in Vermont. *See, e.g., Piper v. Hoyt,* 61 Vt. 539, 17 A. 798, 798 (1889) (requiring strict adherence because "the [statute] provides a special remedy in favor of a particular person...."). More importantly, the lien is a creature of Vermont law and its existence depends entirely on the Vermont statute which created it. *Goodro,* 22 A.2d at 510; *see also Butner,* 440 U.S. at 55, 99 S.Ct. 914. Thus, a contractor who fails to comply with the statute's procedures risks the expiration of his lien. *See, e.g., In re APC Const.,* 112 B.R. at 103 (stating that failure to complete attachment within the statutory window causes the lien to be lost).

The procedures are simple. There are four steps.[FN3] First, a contractor must make a contract or agreement, whether oral or written, to erect, repair, move, or alter real property. Vt. Stat. Ann. tit. 9, §§ 1921(a). Any contractor who does shall have a lien to secure payment by giving written notice of the lien to the property owner. Vt. Stat. Ann. tit. 9, § 1921. Such lien will cover the portion of the contract price remaining unpaid at the time notice is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

given. *Id.*

FN3. For a thorough analysis of Vermont's contractors' lien statute see *The Official Unsecured Creditors' Comm. of the Rainbow Trust v. Moulton Constr., Inc., (In re the Rainbow Trust),* 216 B.R. 77, 83 (2d Cir. BAP 1997).

Second, the contractor must file a written memorandum with the town clerk, asserting his claim for payment and charging the property with a lien as of the date of the visible commencement of his work at the property. Vt. Stat. Ann. tit. 9, § 1923.

Third, within 180 days of filing the memorandum, a contractor must (1) commence an action, either on the contract or the lien statute, *and* (2) cause such property to be attached thereon. Vt. Stat. Ann. tit. 9 § , 1924. If the contractor receives a judgment in the action, the record of judgment must contain a brief notation of the contract on which the judgment is based. *Id.*

**\*655** Fourth, the contractor must record a certified copy of the judgment with the town clerk within five months of the date such judgment was issued. Vt. Stat. Ann. tit. 9, § 1925. The effect of recording the judgment is to encumber the attached property for the amount due on such judgment as if it had been mortgaged for the payment thereof. *Id.* Then, and only then, shall a contractor have the right to foreclose the lien as if it were a mortgage. *Id.*

[17] The effect of an intervening bankruptcy on a contractors' lien differs with respect to the action taken on the lien: perfection or enforcement. If a bankruptcy intervenes after judgment has been issued on the lien, then the automatic stay provisions of the bankruptcy code do not bar the post-petition perfection of the lien by recording the existing judgment. *In re APC Constr., Inc.,* 112 B.R. at 119–120. On the other hand, if the bankruptcy intervenes prior to judgment in an action to enforce the lien then the automatic stay provisions of the

bankruptcy code bar the post-petition enforcement of the lien and toll the statutory period for enforcement. *Id.; see also In re Morton,* 866 F.2d at 564 (discussing the automatic stay provisions of the bankruptcy code with respect to statutory lien enforcement).

[18][19] The dispositive inquiry is whether Naylor perfected his lien by recording his judgment within the five month window set forth in section 1925. Naylor admits that he has not yet recorded his judgment. *See* (Br. Of Appellant 13) ("Naylor has not yet recorded his Judgment"). Therefore, Naylor failed to "strictly adhere" to the statute's procedures and his lien has expired. *In re APC Const.,* 112 B.R. at 125.

Naylor raises two additional questions, however, regarding the Bankruptcy Court's construction of Vt. Stat. Ann. tit 9, § 1925 that this Court will address.

[20][21] First, Naylor questions whether the Bankruptcy Court misconstrued section 1925 by failing to read into section 1925 the finality requirement of Vt. Stat. Ann. tit. 12, § 2904. Naylor argues that because his judgment was not, and is still not final, the section 1925 five-month window for recording his judgment has not yet been triggered. *Id.* Section 1925 does not contain the word "final." Neither do any of the other sections of Vermont's Miscellaneous Lien Statute, Vt. Stat. Ann. tit. 9, §§ 1921–1925. It is a cardinal rule of statutory construction that courts will not presume something that a Legislature has not plainly stated in a statute. *See Swett v. Haig's Inc.,* 164 Vt. 1, 663 A.2d 930, 932 (1995) (stating that when construing a statute courts "presume the Legislature intended the plain, ordinary meaning of the statute."); *see also In re Ahokas,* 361 B.R. 54, 61 (Bankr.D.Vt.2007) ("In general [the court] will not read something into a statute that is not there unless it is necessary to make the statute effective.") (citation omitted).

Furthermore, courts have consistently held that the judgment referred to in section 1925 need not

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

412 B.R. 646
**(Cite as: 412 B.R. 646)**

be final. *See e.g., The Official Unsecured Creditors' Comm. of the Rainbow Trust v. Moulton Constr., Inc., (In re the Rainbow Trust),* 216 B.R. 77, 83 n. 5 (2d Cir. BAP 1997) ("Pursuant to § 1925 ... the Judgment, [referred to therein,] was not required to be either final or contain a notation as to the date of its finality."); *see also In re Ahokas,* 361 B.R. at 65 n. 9 (same). Thus, for the purposes of section 1925, the judgment is not required to be final.

[22] Even assuming, *arguendo,* that Naylor's judgment did not become final until the Vermont Supreme Court affirmed it on September 18, 2007, on Naylor's own argument, his window for recording his **\*656** Judgment has still expired. That window expired on approximately February 18, 2008–five–months from September 18, 2007. But Naylor, by his own admission, has yet to record his Judgment. (Br. Of Appellant 13.)

[23] Second, Naylor questions whether the Bankruptcy Court had the power to consider facts that emerged after April 13, 2006 (the date on which the Debtors filed their Chapter 7 petitions). In principle, Naylor argues that the Bankruptcy Court's determination that his lien had expired prior to April 13, 2006 was "patently erroneous." (Br. Of Appellant 9.) In support of this argument, Naylor argues that the Bankruptcy Court defied the law, and erroneously considered in its analysis, as fact, the post-April 13, 2006 actions that Naylor took, or did not take, with respect to perfecting his contractors' lien. *Id.* As such, Naylor claims that had the Bankruptcy Court followed the law, it would have determined that he had a valid contractors' lien as of April 13, 2006.

The thrust of Naylor's argument is correct, but his conclusions are wrong. Bankruptcy law regarding exemptions and impairments to real property refers to a specific point in time, and Naylor correctly argues that the point in time, applicable here, was April 13, 2006. *See* (Br. Of Appellant 10) (quoting *White v. Stump,* 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924)). Nevertheless, the relation back framework of the contractors' lien

statute creates a lien that relates back to, and is effective as of, the date on which a contractor "visibly began" his work. *See* Vt. Stat. Ann. tit. 9, § 1925.

[24] The relation back concept, albeit "peculiar," is long and well recognized in Vermont. *See In re APC Const.,* 112 B.R. at 113–117 (discussing at length the workings in bankruptcy of contractors' liens that relate back in time). Vermont law "recognizes [that] a timely perfected contractors' lien will relate back to the time of recording of notice of lien or the 'visible commencement' of work." *Id.* at 112 (citations omitted). "If a creditor possesses a [pre-petition] interest in property, and state law establishes a time period for perfection of a lien based on that interest, the 'lien does not lose its preferred standing by reason of the fact that it [is] not perfected until after the commencement of bankruptcy' so long as it is perfected within the time period established by state law." *Lincoln Savings Bank v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.),* 880 F.2d 1540, 1546 (2d Cir.1989) (quoting *Poly Indus., Inc. v. Mozley,* 362 F.2d 453, 457 (9th Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 393, 17 L.Ed.2d 304 (1966)). Here, timely perfection would have related the lien back to as early as April of 2004, the month in which Naylor visibly commenced work under his contract with the Debtors.

Even though the Bankruptcy Court considered facts that actually occurred post-petition, those facts related back to a pre-petition date by way of the statute's relation back framework. The analysis is simple; either Naylor perfected his lien or he did not. If he did, then his lien would have been effective as of the date he began working. If he did not, then his lien expired as of the date he began working. The fact of the matter is that Naylor failed to perfect his lien within the statutory five-month window. The result of such failure is an expired lien, and the Bankruptcy Court correctly considered Naylor's post-petition actions in reaching this conclusion. Therefore, Naylor did not have a contract-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

412 B.R. 646
**(Cite as: 412 B.R. 646)**

ors' lien against the Debtors' property as of April 13, 2006. The Bankruptcy Court correctly concluded the same.

### III.

[25] Having determined that Naylor's lien had expired, the Bankruptcy Court **\*657** advised that if Naylor were to record his judgment, thereby creating a judicial lien, the Debtors could avoid this lien for impairing their homestead exemption pursuant to 11 U.S.C. § 522(f)(1)(a). For the purposes of bankruptcy, a judicial lien is one "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

To create a judicial lien in Vermont, a person who has received a final judgment must record that judgment in any town where real property of the debtor is located. Vt. Stat. Ann. tit. 12, § 2904. If that person had previously attached real property of the debtor in the action in which judgment was rendered, then the recording of that judgment (the judicial lien) will relate back to the date of attachment only if such judgment was recorded within sixty days of its becoming final. Vt. Stat. Ann. tit. 12, § 2902. If not, then the judicial lien becomes effective as of the date final judgment issued. Vt. Stat. Ann. tit. 12, § 2903(a).

With regard to judicial liens in bankruptcy, the bankruptcy code permits debtors to avoid judicial liens if those liens impair the debtor's claimed homestead exemption. 11 U.S.C. § 522(f)(1)(a). However, because Naylor has yet to record his judgment, the issue of whether his judgment impairs the Debtors' homestead exemption is not ripe for review. Accordingly, this Court does not address it.

### IV.

[26] The final issue Naylor raises in his appeal is whether the Debtors properly refinanced their homestead while it was encumbered by his contractors' lien? This question is easily disposed of by reference to Vermont law. Vermont law, Vt. Stat. Ann. tit. 9, § 1923, states that a debtor, or any per-

son whose property is subject to a contractors' lien, may deed, mortgage, or otherwise convey the subject property so long as that person discloses such lien to the vendee or mortgagee in writing or states the existence of the same in the instrument conveying or mortgaging such property. The Debtor's informed their mortgagee, Aegis, of Naylor's lien prior to refinancing. Therefore, the Debtor's lawfully refinanced their home even though it was, as Naylor phrases it, in "defiance" of Naylor's lien. (Br. Of Appellant 16.)

### *Conclusion*

For the reasons stated above, the Court **AFFIRMS** the Orders of the Bankruptcy Court. Naylor's Motions for stay are **DENIED** as moot.

D.Vt.,2009.
In re Cusson
412 B.R. 646

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.